UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 14-CIV-20047-MARTINEZ/GOODMAN

IN RE APPLICATION OF
Victor Mikhaylovich Pinchuk
("Pinchuk"); Acle Limited; Bisenden
Consulting Inc.;
Bramerton Consulting Invest Inc.;
Bungonia Overseas Ltd.; Comidor
Limited;
Kessinglard Limited; Kirkbean
Participation Corp.; Soyer Management
Ltd.; Walkerville Business Ltd.; and
Zambrotta International Inc.,
("Corporate Petitioners") (collectively
"Petitioners") Pursuant to 28 U.S.C. §
1782 For Judicial Assistance in
Obtaining Evidence in this District

**ORDER GRANTING DISCOVERY SUBJECTS' MOTION TO STAY PETITIONERS' APPLICATION FOR THIRD-PARTY DISCOVERY**

This limited-purpose proceeding is before the Court on Felman Production, LLC ("FP"), Felman Trading, Inc. ("FT"), CC Metals and Alloys, LLC ("CCMA"), Georgian American Alloys, Inc. ("GAA") (hereinafter referred to as the "Corporate Discovery Subjects") and Mordechai Korf's ("Mr. Korf") (collectively the "Discovery Subjects") Motion to Stay Petitioner's Application for Third-Party Discovery. (the "Motion") [ECF

10].[1] The Discovery Subjects request a stay of Petitioners' January 6, 2014 Application for Discovery Pursuant to 28 U.S.C. § 1782 (the "Cyprus 1782 Application") [ECF 1], which seeks discovery for use in litigation pending before the Limassol District Court in the Republic of Cyprus (the "Cyprus Actions") in aid of certain petitions (the "Cyprus Petitions").

Because the Motion provides evidence and credible arguments that the disputes in the Cyprus Petitions are referable to arbitration under shareholders' agreements and because discovery at this early stage *may* well be premature in Cyprus (as the Cypriot Court has not narrowed or pinpointed the issues in dispute), the Undersigned **grants** the requested relief.[2] Specifically, the Undersigned stays this discovery proceeding until the Cyprus Court rules on motions to stay and/or strike Petitioner's discovery petitions in the Cypriot Court. The Discovery Subjects estimate that the Cypriot Court's rulings will occur on or before June 31, 2014.

In the meantime, all other pending motions will be **held in abeyance** until the Court is advised of the Cypriot Court's relevant rulings. If the Cypriot Court does not

---

[1] Citations to the docket in the instant case are cited as "ECF__". Citations to the docket in Case No. 13-CIV-22857, involving Pinchuk's earlier-filed Section 1782 application, filed in connection with the LCIA Arbitration are cited as "LCIA App. ECF ___."

[2] A motion to stay is a non-dispositive matter and therefore a federal magistrate judge has jurisdiction to adjudicate it without the necessity of a report and recommendation. *Delta Frangible Ammunition, LLC v. Sinterfire, Inc.*, No. 06-1477, 2008 WL 4540394 (W.D. Pa. Oct. 7, 2008).

rule on the motions to stay or strike by August 11, 2014, then Petitioners may seek an order lifting, vacating, terminating or rescinding the temporary stay created by this order.  **The Clerk is directed to designate all other motions as being held in abeyance.**

## FACTUAL BACKGROUND

Although the Corporate Petitioners each have their own shareholder agreements, those agreements share certain commonalities, including the manner of resolving disputes amongst the respective shareholders arising "out of or in connection with [the shareholders agreement]."[3]  Respondents in the Cyprus Actions assert they have had to take actions to compel Petitioners' compliance with the shareholder agreements and to strike and/or stay the Cyprus petitions.[4]

In particular, on or about February 5-6, 2014, the Cyprus Actions' respondents filed motions to stay and/or strike the petitions.  Those motions request the Cypriot Court to stay the Cyprus Actions pursuant to Article 8 of the International Commercial

---

[3]     The declaration of Soteris Pittas, a Cypriot lawyer, summarizes the common features of the agreements in paragraph 2.2(e). [ECF 10-1].

[4]     In the petitions filed in Cyprus, the Cyprus Petitioners seek injunctive relief to protect investments in certain holding companies over which they say Igor Valeryevich Kolomoisky ("Kolomoisky") and Gennadity Borisovich Bogolyubov ("Bogolyubov") are said to exercise control. Kolomoisky and Bogolyubov have filed a motion to intervene [ECF 12] in the instant Section 1782 proceeding. Petitioners have filed a response in opposition [ECF 14] and movants have filed a reply [ECF No. 25].  The motion to intervene is still pending.  However, as a result of the limited-duration stay being entered here, the motion will be held in abeyance.

Arbitration Law (L. 101/87) of Cyprus because the shareholder agreements obligate Petitioners to resolve disputes with their fellow shareholders in LCIA arbitration; or alternatively to strike the petitions because they are frivolous, vexatious, oppressive, filed for an improper purpose, and because the Cyprus Petitioners lack standing to file the petitions.

The Discovery Subjects predict the Cypriot Court will decide these pending motions no later than May/June 2014. If the motions are successful, then the Cyprus Actions will be stayed pending resolution of the disputes in LCIA arbitrations or, alternatively, struck entirely.

According to the Discovery Subjects, if the Cypriot Court denies the stay/strike motions, then within one month of the ruling, the Cyprus Actions' Respondents will file their substantive oppositions, which will constitute their defenses to the Cyprus Petitions. The Cypriot Court will then hold a hearing in July 2014, where applications for discovery will be issued. Around October/November 2014, the Cypriot Court will have a hearing and make any orders for discovery of documents. Only then will the parties disclose documents to one another.[5]

---

[5] Petitioners' expert, Alexandros Tsirides, a Cypriot attorney, does not dispute the timeframe in the Discovery Subjects' stay motion regarding when this Court can expect the Cyprus Court's ruling on the pending motions to strike/stay. [ECF 16-3 at 7, ¶19] ("I agree with the timeframe described in paragraph 7 of the Pittas Declaration . . .").

Thus, according to the Discovery Subjects, it is premature to determine whether the material Petitioners seek will be of use to the Cypriot Court, or even welcomed by it, because it is not clear that Petitioners properly commenced the Cyprus Actions or that they even fall within the jurisdiction of the Cypriot Court. Moreover, the Discovery Subjects argue it is unclear what the issues in dispute would be for purposes of document production (assuming that the disputes could be heard in the first place).

## LEGAL ANALYSIS

### THIS MATTER SHOULD BE STAYED OUT OF RESPECT FOR THE CYPRIOT COURT'S PRIMARY AUTHORITY TO MANAGE THE DISPUTE PENDING BEFORE IT.

This Court possesses the inherent authority to stay proceedings before it, in order to provide for the fair and efficient administration of justice. *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008).[6] As this Court has explained, "[t]he broad authority to grant a stay extends to 28 U.S.C. § 1782 proceedings." *In re Alves Braga*, 789 F. Supp. 2d 1294, 1307-08 (S.D. Fla. 2011) (citations omitted); *accord In re Noboa*, Misc. Nos. M18-302, M19-111, 1995 WL 581713, at *3 (S.D.N.Y. Oct. 4, 1995) (staying the "taking of . . . depositions" under § 1782). The

---

[6] *Accord Velarde v. HSBC Private Bank Int'l*, No. 13-22031-CIV, 2013 WL 5534305, at *7 (S.D. Fla. Oct. 7, 2013) ("A district court is empowered to stay its own proceedings."); *Republic of Venez. v. Philip Morris Cos., Inc.*, No. 99-0586-Civ, 1999 WL 33911677, at *1 (S.D. Fla. April 28, 1999) (a court's discretion to stay its proceedings "is derived from and incidental to a court's inherent power to control the disposition of cases on its docket and ensure a 'fair and efficient' adjudication of matters.")

Court retains the discretionary authority to stay proceedings even when the jurisdictional requirements for Section 1782 are met.[7]

The relevant considerations for determining whether to impose a stay in this case are: (1) international comity; (2) fairness to litigants; and (3) judicial efficiency. *Alves Braga*, 789 F. Supp. 2d at 1308. All three factors favor a limited-duration stay.

"Fairness considerations include . . . the possibility of prejudice in the foreign forum to the party opposing the stay." *Id.* at 1309. While the Discovery Subjects have explained at length how the discovery sought would prejudice them, Pinchuk and the other Petitioners have not **demonstrated** that they would suffer unfairness and prejudice from the type of stay requested. To be sure, they have *suggested* that the Discovery Subjects will destroy documents. However, the Discovery Subjects have filed a verified Notice of Compliance [LCIA ECF 3], representing that they have implemented a sufficient document preservation procedure.

The Petitioners' concerns over possible document destruction flow, at least in part, from a 2011 decision by a West Virginia federal district court (the *Mt. Hawley* decision) in which the district court judge "highlighted the Kolomoisky-controlled

---

[7]  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."); *In re Pott*, No. 12-24515-CIV, 2013 WL 3189262, at *2 (S.D. Fla. June 20, 2013) ("If a district court finds that the four requirements of [§ 1782] are met, the district court is authorized, but **not required** to provide the requested judicial assistance." (citing *Intel*, 542 U.S. at 255)) (emphasis supplied).

entity's 'varying and extensive abuses of the discovery process,' including its blatant disregard for myriad discovery orders, numerous misrepresentations respecting the control and ownership of the company, and the permanent destruction of relevant information." [LCIA ECF 55, p.1]. The Undersigned is not disregarding this history, but notes that those concerns would remain even if the Court denied the stay motion. Furthermore, the "but-the-discovery-might-be-destroyed-or-spoliated" argument is largely speculative and does not establish prejudice (although it surely might generate suspicion).

This stay gives a modest period of time for resolution of the already-pending motions in the Cypriot Court and should not disrupt those proceedings. There does not appear to be significant prejudice to the Petitioners arising directly from this stay, and this Court has found the absence of prejudice to be a compelling reason for granting a stay of Section 1782 proceedings. *See Alves Braga*, 789 F. Supp. 2d at 1300 (granting stay based, in part, on applicant's inability to explain why a "modest discovery stay" would harm him).

In *Alves Braga,* the Undersigned recognized that prudential considerations favor a stay in a Section 1782 proceeding when a foreign tribunal's pending decision is "likely to have a substantial or controlling effect on the claims and issues in the stayed case." 789 F. Supp. 2d at 1310 (quoting *Miccosukee Tribe of Indians of Fla. v. South Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009)). The Cypriot Court's decision

7

on the pending motions will, at a minimum, assist the Undersigned in ruling on the Discovery Subjects' challenges to the Cyprus 1782 Application. A finding that Petitioners should have sought to resolve the Cyprus Actions in an LCIA arbitration will help to inform the Undersigned regarding whether Petitioners intended to circumvent foreign proof-gathering restrictions. It may also illustrate the Cypriot Court's receptivity to the discovery sought here (assuming it were to be obtained).

These reasons are sufficient to justify a stay. In fact, these are the reasons why the Undersigned stayed the related LCIA 1782 Application -- to allow the panel in London to respond to the Undersigned's various inquires (so that it could determine the LCIA Tribunal's receptivity to the requested discovery and whether permitting the § 1782 discovery would result in circumvention of foreign proof gathering). To be sure, the LCIA panel recently held a hearing in which it declined to specify its position if discovery were to be obtained and opted to not answer the Undersigned's specific questions. Nevertheless, the Undersigned provided a limited stay in the LCIA-related Section 1782 proceeding in order to give the foreign arbitration panel the opportunity to advise this Court of its attitude about whether discovery obtained in the United States could be considered in the LCIA proceeding.

When evaluating a requested stay, the court may take into account (1) the "receptivity of the foreign [tribunal] . . . to U.S. federal-court judicial assistance," *Intel*,

524 U.S. at 264,[8] (2) circumstances which demonstrate "potential abuses that would warrant a denial of [a Section 1782] application," *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011); *accord In re IPC Do Nordeste, Ltda*, No. 12-50624, 2012 WL 4448886, at *5 (E.D. Mich. Sept. 25, 2012) (*Intel* factors are "non-exclusive"), and (3) whether "the litigant's motives are tainted by a surreptitious effort to bypass foreign discovery rules." *Alves Braga*, 789 F. Supp. 2d at 1307 (citation omitted).[9]

Here, the Discovery Subjects contend that Pinchuk and the Corporate Petitioners brought the Cyprus Actions in direct contravention of the relevant shareholder agreements calling for arbitration before the LCIA of any potential disputes between shareholders. The Discovery Subjects also contend that Pinchuk is trying (thus far unsuccessfully) to avoid the LCIA's proof gathering restrictions.

Ignoring, for the moment, the allegedly arbitrable nature of the disputes at issue in the Cyprus Actions, the Discovery Subjects also say that those proceedings

---

[8] In *Intel*, the Supreme Court laid out four non-exhaustive discretionary factors relating to § 1782, namely (1) whether the requested evidence is also within the "foreign tribunal's jurisdictional reach"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; (4) and whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

[9] In *Alves Braga*, this Court noted that although § 1782 "does not expressly reference a requirement of discoverability under [foreign] laws," the district court should still consider whether the § 1782 applicant "is attempting to evade [foreign] evidentiary limitations." *Alves Braga*, 789 F. Supp. 2d at 1307.

are under a particular European-wide regulatory scheme which vests Cypriot courts with exclusive jurisdiction over matters concerning applications to dissolve Cypriot companies. As a result, the Discovery Subjects contend that the Cyprus 1782 Application intrudes on this exclusive jurisdiction because only evidence which is situated in Cyprus or adduced at the request of the Cypriot Court will be admissible in those proceedings.

According to the Discovery Subjects, Petitioners' decisions to proceed with the Cyprus 1782 Application evinces a disregard for, and intentional avoidance of, Cypriot law and the Cypriot Court's proof-gathering restrictions. They argue that Petitioners' failures to comply with the relevant shareholder agreements demonstrates an attempted circumvention of the LCIA as a forum and its proof-gathering rules and restrictions.

If the Cyprus Actions' claims are arbitrable (and the Undersigned is not making a ruling on this issue either way), then Petitioners' filing of those claims in a Cypriot Court and his filing of the Cyprus 1782 Application undermine the bargained-for cost[10] and privacy benefits contained in the shareholder agreements' arbitration clauses.

---

10    *See United Steelworkers of Am. v. USX Corp.*, 966 F.2d 1394, 1405 n.38 (11th Cir. 1992) (international arbitration is intended to be "the most efficient and inexpensive means of resolving . . . disputes"); *Traffic Sports USA, Inc. v. Federacion Nacional Autonoma de Futbol de Honduras*, No. 08-20228-CIV, 2008 WL 4792196, at *4 (S.D. Fla. Oct.

The Undersigned recognizes that Pinchuk and his fellow Petitioners stridently disagree with the legal arguments advanced by the Discovery Subjects, especially those concerning the existence, timing and scope of discovery available in the Cyprus Action. Similarly, the Undersigned appreciates that there is a dispute over whether the Cyprus Court will refer the action to arbitration before the LCIA. Likewise, the Undersigned recognizes that the parties disagree on whether the arbitration clauses even apply to the claims raised by the Cyprus Petitioners. The Cyprus Petitioners say they do not apply and the Discovery Subjects (not surprisingly) take the opposite position.

The Discovery Subjects are not arguing that Section 1782 mandates, in every instance and as a threshold matter, that an applicant must have *first* sought discovery from the foreign tribunal. But, "[w]hile there is no 'exhaustion' requirement for seeking discovery under § 1782, the District Court may, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction." *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 241 (D. Mass. 2008); *accord IPC Do Nordeste, Ltda*, 2012 WL 4448886, at *9 ("[Section] 1782 applicant's conduct in the foreign forum is not irrelevant").

---

31, 2008) (arbitration is a "reliable, speedy and efficient mode of dispute resolution"); *Republic of Kaz. v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir. 1999) (stating that Section 1782 "was enlarged to further comity among nations, not to complicate and undermine the salutary device of private international arbitration.").

The Discovery Subjects argue that, in light of the Court's discretionary authority to consider Pinchuk's purported attempt to circumvent a ruling from the Cypriot Court and the LCIA (insofar as the Cyprus Actions are arbitrable) on whether this requested discovery is necessary or desired, prudence militates in favor of a stay of these Section 1782 proceedings until the Cypriot Court rules on the threshold jurisdictional motions. The Undersigned is persuaded by this practical and logical approach.

The Undersigned is not an expert on Cypriot law and it is difficult to select one expert's opinion as more credible than the others based solely on the submission of competing declarations from attorneys who all appear to be competent and experienced.

In fact, as Pinchuk and his fellow Petitioners explain, "[p]roceedings under § 1782 are not designed to engage the United States in a speculative exercise of assessing the merits of the underlying foreign claims. It is for the Cyprus Court, and the Cyprus Court alone, to determine whether the claims should proceed there." [ECF 16, p. 8].

Once the Cypriot Court resolves these threshold jurisdictional issues, the parties may advise the Court on that ruling (which may result in the Cyprus Actions having to be brought before the LCIA) and other relevant circumstances. The Undersigned would surely benefit from a clearer picture and timeline pertaining to

the foreign tribunal's receptivity to the discovery sought and an understanding of which tribunal will hear the dispute. Phrased differently (from a slightly different perspective), the Undersigned would be on firmer legal footing about the interplay of Cypriot law if the Cyprus Court were to rule on the pending substantive motions before the Undersigned definitively ruled on the request for Section 1782 discovery.

The Undersigned's decision to grant a stay of modest duration pending a decision by the underlying foreign tribunal is not unique. To the contrary, several other courts have adopted this approach. *See In re Finserve Grp. Ltd.*, No. 4:11-mc-2044-RBH, 2011 WL 5024264, at *3-4 (D.S.C. Oct. 20, 2011) (denying § 1782 discovery when applicant gave no indication as to the "receptivity" of the LCIA tribunal to the requested discovery, when § 1782 application was filed *before* arbitration was filed and arbitral tribunal was formed); *Babcock Borsig AG*, 583 F. Supp. 2d at 241 (denying § 1782 discovery requests "until if and when the [arbitral tribunal] provides some affirmative indication of its receptivity to the requested materials"); *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 108 (D.D.C. 2010)(denying discovery under 28 U.S.C. § 1782 where party to international arbitration was seeking it without permission from the foreign arbitral tribunal); *see also Kestrel Coal Pty, Ltd. v. Joy Global, Inc.*, 362 F.3d 401, 406 (7th Cir. 2004)(referring § 1782 applicant to foreign judge for a renewed application for discovery "[i]f . . . the documents become important later").

In an effort to avoid further delay of Petitioners' efforts to obtain discovery from the Discovery Subjects, the Undersigned notes interest in receiving clarification from the Cypriot Court on the issues raised by the stay motion:

1. Are the claims at issue in the Cyprus Actions covered by the arbitration clauses under the shareholder agreements?

2. Would the Cypriot Court classify the requested discovery as premature and is evidence obtained at the request of the Cypriot Court or situated in Cyprus the **only** type of evidence admissible in the Actions?

3. Do the rules governing the Cypriot Actions **preclude** the parties from seeking to obtain documents and testimony in a Section 1782 proceeding or from using the materials (if they are obtained in the United States) in the Actions?

4. Do the Petitioners first need to seek evidence from the Cypriot Court before seeking and obtaining it here in a Section 1782 proceeding?

5. Does the Cypriot Court anticipate the issuance of a ruling in which it determines the scope, nature and timing of discovery?

6. Does the procedural history of the *Mt. Hawley* case play any role in the Cypriot Court's conclusions, and, if so, what is its impact?

The Undersigned is in no way giving an assignment or a directive to the Cypriot Court and does not necessarily *expect* that answers will be forthcoming. The

Undersigned also realizes that the LCIA recently declined to answer a similar set of questions in a Pinchuk-filed arbitration in which he is seeking discovery from the same Discovery Subjects. *See* Case 13-22857, Southern District of Florida, ECF 83-1, pp. 95-96 ("we are not minded to give any specific answers to the questions that have come from the Court."). Nonetheless, the Undersigned believes it to be worthwhile to at least make the effort to determine, if possible, the Cypriot Court's receptiveness toward Section 1782 discovery obtained in the United States. Hope springs eternal and the Undersigned believes that the Cypriot Court will, at a minimum, seriously consider my request for assistance through answers to some or all of the limited questions.

CASE NO.: 1:14-20047-CIV

## CONCLUSION

This discovery proceeding is stayed until the Cypriot Court rules on the pending motions to stay and/or strike the Cyprus Petitions, and the Clerk shall hold all other motions in the instant case in abeyance. Because the Undersigned is mindful of the risks associated with an open-ended stay or an unreasonably long stay, Pinchuk and the other applicants may seek to terminate, lift or rescind the stay if the Cypriot Court does not issue its rulings by August 11, 2014.

**DONE AND ORDERED** in Chambers, Miami, Florida, March 31, 2014.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Jose E. Martinez
All counsel of record